UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| REBECCA TWING, | ) |
| Plaintiff, | ) |
| v. | ) No. 19-cv-00902 (KBJ) |
| UNITED STATES, | ) |
| Defendant. | ) |

### ORDER GRANTING MOTION TO INTERVENE

On March 29, 2019, Plaintiff Rebecca Twing filed the instant negligence action against Defendant United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 *et seq*. (*See* Compl., ECF No. 1, ¶¶ 1, 19.) In her one-count complaint, Twing seeks damages for injuries that she suffered after falling in the parking lot of the Smithsonian National Zoo (*see id.* ¶¶ 7–13; *id.*, Prayer for Relief), where she was attending an event hosted by her employer (*see* Def.'s Statement of Material Facts Not in Genuine Dispute, ECF No. 12-14, ¶ 18; Pl.'s Statement of Material Facts in Genuine Dispute, ECF No. 13-6, ¶ 18).

Before this Court at present is a Motion to Intervene that American Zurich Insurance Company ("Zurich") has filed, in which it seeks to intervene as a plaintiff in this suit. (*See* Corrected Mot. to Intervene, ECF No. 17, at 1.)[1] Zurich is the workers' compensation insurer for Twing's employer, and it argues that it has a legally protected interest in this action by virtue of having paid Twing workers' compensation benefits

---

[1] Page-number citations to documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

for the personal injuries at issue in this case.  (*See id.* ¶¶ 8–9.)  Zurich maintains that intervention is necessary to ensure that its interests are represented adequately, and it urges the Court to allow it to intervene, either as a matter of right under Federal Rule of Civil Procedure 24(a), or permissively under Federal Rule of Civil Procedure 24(b). (*See id.* ¶¶ 9–12; *see also* Zurich's Resp. to Def.'s Mem. in Opp'n to Mot. to Intervene ("Zurich's Resp."), ECF No. 21, at 6, 11.)  The Government opposes Zurich's motion, contending, *inter alia*, that the motion is untimely, and that the present lawsuit does not pose any threat to Zurich's interests.  (*See* Def.'s Mem. in Opp'n to Mot. to Intervene ("Gov't Opp'n"), ECF No. 20, at 7–9.)

For the reasons explained below, this Court finds that the instant action may threaten Zurich's interests in this case, and that the existing parties may not be in a position to protect those interests adequately.  The Court therefore concludes that Zurich is entitled to intervene as a matter of right, and, as a consequence, its intervention motion will be GRANTED.

I.

To intervene as a matter of right, a movant must demonstrate that (1) it has "an interest relating to the property or transaction which is the subject of the action"; (2) "the action may as a practical matter impair or impede" that interest; (3) the parties to the case do not "adequately represent[]" the movant's interest; and (4) the motion to intervene is timely.  *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (quoting Fed. R. Civ. P. 24(a)(2)).[2]

---

[2] Where, as here, a movant seeks to intervene as a plaintiff in the case, courts in this circuit also typically assess whether the movant has standing to bring its claims.  *See, e.g.*, *Fund for Animals*, 322 F.3d at 731–32.  But, in this case, Zurich and Twing are both seeking damages from the Government (*see* Compl., Prayer for Relief; Zurich's Proposed Compl., ECF No. 17-2, Prayer for Relief), and

In the Court's view, Zurich has satisfied each of the intervention requirements. To start, there is little doubt that Zurich has "an interest relating to the property or transaction" at issue in this case. *See* Fed. R. Civ. P. 24(a)(2). As the insurance carrier who has paid workers' compensation benefits to Twing for the injuries she incurred as a result of the Government's alleged negligence, Zurich has a significant interest in recouping its losses and holding the Government accountable for its alleged wrongdoing. *See, e.g.*, *Berroyer v. United States*, 282 F.R.D. 299, 304 (E.D.N.Y. 2012) (finding that an insurance company possessed the requisite interest for purposes of Rule 24(a) where it sought to recover workers' compensation benefits that it had paid to the plaintiff for injuries stemming from the defendant's alleged negligence). Furthermore, "it is well settled" under D.C. law that parties who have paid workers' compensation benefits have an equitable lien on "any recovery" that the injured employee obtains from the tortfeasor, *Wash. Metro. Area Transit Auth. v. Reid*, 666 A.2d 41, 44 (D.C. 1995), and courts have accordingly allowed such parties to intervene in actions that employees have brought against alleged tortfeasors in order to assert their liens and protect their interests, *see, e.g.*, *Felch v. Air Fla., Inc.*, 866 F.2d 1521, 1523 (D.C. Cir. 1989) (noting that the district court granted an insurer's motion to intervene where the insurer sought "to assert a lien for compensation benefits that had been paid to the [employee]"); *see also Reid*, 666 A.2d at 44 (explaining that, because WMATA had paid workers' compensation benefits to an injured employee, it "had an equitable lien

---

Zurich's request for relief is no broader than Twing's. Therefore, it is not necessary to conduct an independent standing analysis in this context. *See, e.g.*, *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) (stating that, because an "intervenor of right must independently demonstrate Article III standing if it pursues relief broader than or different from the party invoking a court's jurisdiction[,]" the appellate court "erred by inquiring into [the intervenor's] independent Article III standing" given that the intervenor was asking for the same relief as the party that "clearly had standing to invoke the [court's] appellate jurisdiction").

3

on any recovery by [the employee]" and could therefore intervene in the employee's lawsuit against the third-party tortfeasor).  Thus, it is clear to this Court that Zurich has a cognizable interest in the outcome of this litigation.

The Court is also convinced that the instant lawsuit "may as a practical matter impair or impede" Zurich's "ability to protect its interest[.]"  *See* Fed. R. Civ. P. 24(a)(2).  If Twing does not succeed in this action, the "practical consequence" is that she will not receive any damages for her injuries, and Zurich's ability to recover its expenses will be substantially impeded.  *See Fund for Animals*, 322 F.3d at 735 (stating that courts should focus on "the practical consequences of denying intervention" when evaluating whether a proposed intervenor's interests may be impaired (internal quotation marks and citation omitted)).  What is more, if Twing *does* obtain an award of damages, or if the parties ultimately decide to settle the case, there is no guarantee that Twing will actually reimburse Zurich for the benefits it has paid.  And even if Zurich could theoretically proceed to sue Twing to obtain a reimbursement, that possibility is not a recognized reason to deny Zurich the opportunity to intervene in this suit.  *See Fund for Animals*, 322 F.3d at 735 (explaining that courts should not deny a motion to intervene under Rule 24(a) simply because the proposed intervenor could protect its interests by bringing a subsequent lawsuit); *see also Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 910–11 (D.C. Cir. 1977) (noting that courts should consider whether allowing parties to intervene under Rule 24(a) "may lessen the need for future litigation to protect their interests").  Instead, the court must look at the potential practical effects of Twing's lawsuit on Zurich's interests, and, when that standard is applied here, the Court finds that Zurich's interest might be impaired if it is unable to intervene in this

action.[3]

For similar reasons, the Court further concludes that the existing parties may not represent Zurich's interest adequately. As Zurich explains in its brief, it is far from clear that the parties will "carve out Zurich's rightful share from any settlement monies or judgment." (Zurich's Resp. at 8.) That is, because Twing "ha[s] an interest in keeping whatever payout [she] ultimately may receive as a result of trial or settlement[,]" and the Government has no obligation to pay Zurich the amount it is owed if Zurich is not a party to the suit, neither Twing nor the Government "has an incentive to ensure that [Zurich's] lien is satisfied." *See Berroyer*, 282 F.R.D. at 303–04. This means that intervention may be quite necessary to ensure adequate representation of Zurich's interests, when a mere possibility that Zurich's interests would not be adequately represented is sufficient for purposes of Rule 24(a). *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (explaining that a proposed intervenor need only demonstrate "that representation of his interest '*may* be' inadequate; and the burden of making that showing should be treated as minimal" (emphasis added).)

The final question, then, is whether Zurich has brought its intervention motion in a timely manner. When assessing the timeliness of a motion to intervene, courts in this jurisdiction must consider "all the circumstances" of the case, including the "time

---

[3] The Government argues that Zurich's interest will not be harmed by Twing's suit, because if she wins, and the civil damages award exceeds the workers' compensation award, Zurich will not be required under D.C. law "to tender payment of any workers' compensation benefits" to Twing. (*See* Gov't Opp'n at 8–9.) But in making this argument, the Government appears to focus only on the workers' compensation benefits that Zurich may have to pay *in the future* for the ongoing effects of Twing's injuries. In other words, the Government does not account for the fact that Zurich has *already* paid workers' compensation benefits, and that it seeks to ensure that it will receive reimbursement for those expenses if the Government is found liable for Twing's injuries.

5

elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Karsner v. Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008) (quoting *United States v. British Am. Tobacco Austl. Servs., Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006). In the instant case, although Zurich filed its motion to intervene after the parties had conducted discovery and completed summary judgment briefing (*see* Corrected Mot. to Intervene at 3; Gov't Opp'n at 5), the remaining considerations weigh strongly in Zurich's favor.

As already discussed, Zurich seeks to intervene in Twing's suit in order to assert an equitable lien against any recovery that Twing may obtain, and Zurich may suffer substantial harm to its interest in recovering its losses if it is denied intervention, because neither of the existing parties has an incentive to ensure that Zurich is paid. (*See* Zurich's Resp. at 8.) Moreover, and importantly, the existing parties to the case will experience little (if any) prejudice if Zurich's motion is granted. Zurich is not seeking to conduct any further discovery in this matter, and its proposed claim is virtually identical to the one that Twing has already asserted. (*See id.* at 7.) Thus, if the Court grants Zurich's motion to intervene and permits it to file a brief in opposition to the Government's pending motion for summary judgment, Zurich's intervention will at most delay the litigation by a mere matter of weeks—and that is only *if* Zurich chooses to file such a brief. Consequently, "in consideration of all the circumstances" of the case, the Court concludes that Zurich's motion is timely under Rule 24(a). *See Karsner*, 532 F.3d at 886 (internal quotation marks and citation omitted).

II.

For the reasons discussed above, the Court has determined that Zurich meets the requirements for intervention as a matter of right under Rule 24(a).  *See* Fed. R. Civ. P. 24(a)(2).[4]

Accordingly, it is hereby

**ORDERED** that Zurich's Motion to Intervene (ECF No. 17) is **GRANTED**.  Zurich is permitted to participate in this matter as an Intervenor-Plaintiff.  It is

**FURTHER ORDERED** that, if Zurich wishes to file a brief opposing the Government's pending motion for summary judgment in this case, any such brief shall be filed on or before April 13, 2021.  If Zurich submits a brief, and the Government seeks to file a response thereto, the Court will entertain a motion for leave to file a surreply.  It is

**FURTHER ORDERED** that this matter is administratively **STAYED** until the Court receives Zurich's brief in opposition, if it decides to file one.

DATE:  March 30, 2021

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

---

[4] Having so concluded, the Court need not address whether the requirements of permissive intervention under Federal Rule of Civil Procedure 24(b) are also satisfied.